UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| United States of America,<br><br>　　　　　　Plaintiff,<br><br>　v.<br><br>Niesha Nicole Jackson,<br><br>　　　　　　Defendant. | Nos.　2:09-cr-00325-KJM<br>　　　　2:14-cr-00268-KJM<br><br>ORDER |

Defendant Niesha Nicole Jackson moves to reduce her sentence to time served under 18 U.S.C. § 3582(c)(1)(A). The motion is **denied**, as explained below.

**I.　BACKGROUND**

Between 2006 and 2008, Ms. Jackson participated in a scheme to trick bank tellers into authorizing large, fraudulent withdrawals from prepaid debit cards. *See* Factual Basis, Plea Agmt. Ex. A, ECF No. 36.[1] She played the role of a card services representative and falsely reassured tellers over the phone that funds were available. *See id.* She pled guilty, but then failed to appear for her sentencing, and this court issued a bench warrant for her arrest. *See* Minutes, ECF No. 74; Order, ECF No. 75.

/////

---

[1] Citations refer to the documents filed in case No. 09-0325 unless otherwise noted.

1    Ms. Jackson lived on the run for the next two years. *See* Factual Basis, Plea Agmt. Ex. A,
2    Case No. 14-268, ECF No. 10.  During that time, she was featured in a TV crime show, which
3    described her as the "Bank Robbing Babe." *Id.*  Officers eventually arrested her in a hotel
4    parking lot. *Id.*  She was carrying several phones, a falsified driver's license, and a bank card in
5    another person's name. *Id.*  She also had a custom shirt and business cards with her nickname
6    from the crime show: "BR Babe." *Id.*  She pled guilty to a failure to appear at her sentencing in
7    addition to the previous fraud charges, and this court sentenced her to a total 187 months'
8    incarceration. *See* J. & Commitment at 2, ECF No. 123.  The court also imposed a 60-month
9    term of supervised release following incarceration and ordered her to pay restitution in excess of
10   $630,000. *Id.* at 3, 5–8.  She is currently serving her sentence in FCI Aliceville in Aliceville,
11   Alabama. *See* Opp'n Ex. 1 at 1, ECF No. 184-1.  Her projected release date is August 31, 2027,
12   and she has served approximately half of her statutory sentence. *See id.* at 1, 4.

13   In April 2020, Ms. Jackson filed a pro se motion for a "hardship credit," which the court
14   construed as a motion for compassionate release under 18 U.S.C. § 3582(c). *See* Pro Se Mot.,
15   ECF No. 174; Min. Order, ECF No. 175.  The court appointed counsel to represent her, and
16   counsel filed an updated motion on her behalf in July.  Appt. Order, ECF No. 176; Mot., ECF
17   No. 181.  Ms. Jackson argues her medical conditions and the high risk of infection with the virus
18   that causes COVID-19 are "extraordinary and compelling reasons" to reduce her sentence to time
19   served. *See id.* at 4–8.  She has had ear infections and hearing problems since childhood, and she
20   has been prescribed antibiotics to treat a potential ear infection. *See id.* at 4–5 (citing Medical
21   Records, Mot. Ex. B[2]).  Ms. Jackson also reports in an unsworn email to her counsel that she
22   suffers from anemia and upper respiratory allergies. *See id.* at 5–6 (citing Medical Records, Mot.
23   Ex. B; Email to Counsel (May 6, 2021), Mot. Ex. C, ECF No. 182-2).  Although she claims to be
24   at higher risk of severe COVID-19 as a result of these conditions, she has declined to be
25   /////

---

[2] The court **grants** Ms. Jackson's request to file these medical records under seal to protect her private medical information. *See Chester v. King*, No. 16-01257, 2019 WL 5420213, at *2 (E.D. Cal. Sep. 10, 2019) ("This court, and others within the Ninth Circuit, have recognized that the need to protect medical privacy qualifies as a 'compelling reason' for sealing records.").

vaccinated against the virus that causes COVID-19 "because she is afraid of the unknown reaction." *Id.* at 6 (citing Medical Records, Mot. Ex. B).

The court denied Ms. Jackson's previous request for compassionate release because she had not exhausted her administrative remedies, as required by 18 U.S.C. § 3582(c)(1)(A). *See* Order (Aug. 30, 2021), ECF No. 186. Ms. Jackson now renews her motion after fulfilling the exhaustion requirements. *See generally* Renewed Mot., ECF No. 187. She relies on the arguments supporting her original motion, and the government opposes her renewed motion on the same grounds it opposed her original motion. *See id.*; Opp'n Renewed Mot., ECF No. 188. The court submitted the renewed motion and resolves it here.

## II.  LEGAL STANDARD

The district court that imposed a custodial sentence can modify the term of imprisonment under 18 U.S.C. § 3582(c)(1)(A), as amended by the First Step Act of 2018. If, as here, a defendant has exhausted administrative remedies, the analysis is twofold. First, the court must find "extraordinary and compelling reasons warrant" the requested reduction. *Id.* § 3582(c)(1)(A)(i). Second, the court must consider the same factors that were applicable at the original sentencing, enumerated in 18 U.S.C. § 3553(a), to the extent they remain applicable. *See id.* § 3582(c)(1)(A).

Section 3582 further requires a reduction to be "consistent with applicable policy statements issued by the Sentencing Commission." *Id.* § 3582(c)(1)(A). In 2006, the Sentencing Commission issued a policy statement addressing what qualifies as "extraordinary and compelling reasons" to release a defendant from BOP custody. *See* U.S.S.G. § 1B1.13 (last amended November 1, 2018). These policy statements "may inform a district court's discretion for § 3582(c)(1)(A) motions filed by a defendant, but they are not binding." *United States v. Aruda*, 993 F.3d 797, 802 (9th Cir. 2021). The court thus adheres to its practice of considering the Sentencing Commission's policy statement as nonbinding guidance.

Although the Ninth Circuit has not expressly decided which party "bears the burden in the context of a motion for compassionate release brought pursuant to § 3582(c) as amended by the [First Step Act], district courts to have done so," including this court, "agree that the burden

3

remains with the defendant." *United States v. Becerra*, No. 18-0080, 2021 WL 535432, at *3 (E.D. Cal. Feb. 12, 2021).

### III.  DISCUSSION

Many federal district courts, including this court, have held that defendants can demonstrate "extraordinary and compelling reasons" for compassionate release under § 3582(c)(1)(A)(i) if they show (1) their health conditions put them at an increased risk of severe COVID-19 if they become infected and (2) they are at risk of infection.  Risk of infection can be shown by demonstrating the facility where they reside is currently suffering from a COVID-19 outbreak or is at risk of an outbreak, for example, because it is a congregate living facility in which inmates and staff cannot consistently maintain safe physical distances. *See, e.g.*, *United States v. Terraciano*, 492 F. Supp. 3d 1082, 1085–86 (E.D. Cal. 2020).

This court has also recognized, however, that the question is more complicated when a defendant has declined a vaccination, as Ms. Jackson has done.  "If defendants could buttress their motions for compassionate release by refusing a safe and effective vaccine, they would be operating on an unfairly perverse incentive." *United States v. Figueroa*, No. 09-00194, 2021 WL 1122590, at *5 (E.D. Cal. Mar. 24, 2021).  "In the worst case scenario, this incentive might lead a person to unreasonably refuse necessary and readily available medical treatment in an effort to create 'extraordinary and compelling' circumstances when none exist." *Id.*  Even those "who harbor no improper motives might hesitate to accept a vaccine when they should not wait, putting themselves and others in the prison at risk." *Id.*  District courts throughout the United States have reasoned similarly and "have ruled with consistency that an inmate's denial of a COVID-19 vaccination weighs against a finding of extraordinary and compelling circumstances." *United States v. Baeza-Vargas*, 522 F. Supp. 3d 840, 843–45 (D. Ariz. Apr. 5, 2021) (collecting authority).

In *Figueroa*, these circumstances led this court to deny the defendant's motion for compassionate release. *See* 2021 WL 1122590 at *5.  The defendant's reasons for declining vaccination were unclear, and the court had no "reliable professional judgments" in the record to assess whether his fears about side effects were justified. *Id.*  The same is true here. Ms. Jackson

offers only an unsworn email to her counsel in support of her claim that she suffers from anemia and upper respiratory allergies. Her medical records from the Bureau of Prisons do not support her claims. *See, e.g.*, Mot. Ex. B at 11 (reporting no respiratory allergies). Although Ms. Jackson has suffered from ear infections and hearing problems, her medical records show she has received treatment for these problems. *See* Mot. Ex. B at 2–5. Nor does the court find she is at greater risk of infection, severe COVID-19, or hearing loss based on the possibility that the virus may cause problems in the inner ear and anecdotes reported in the popular press. *See* Mot. at 4–5. "Reports in the popular press are concerning, but they are rarely the work of subject matter experts. News article summaries are not controlled, not subjected to statistical testing, and not peer reviewed." *United States v. Mathews*, No. 15-0118, 2021 WL 3883735, at *5 (E.D. Cal. Aug. 31, 2021). Ms. Jackson's reasons for declining vaccination are similarly uncertain. It is unclear what vaccine risks she fears and why.

The numbers of confirmed infections and deaths in FCI Aliceville, where Ms. Jackson is assigned, are also low. At the Bureau of Prison's most recent count, only one of the 1,204 inmates currently living in the facility and only five staff members had recently tested positive.[3] *See* U.S. Bureau of Prisons, FCI Aliceville (last visited Jan. 18, 2022);[4] U.S. Bureau of Prisons, "COVID-19 Coronavirus: COVID-19 Cases" (last visited Jan 18, 2022).[5] According to the Bureau of Prisons, no inmates and no staff at FCI Aliceville have died of COVID-19. *See supra* "COVID-19 Cases." This court has viewed the Bureau's reports of low infection rates with skepticism in the past, but only when a defendant shows skepticism is warranted. *See, e.g.*, *United States v. Pickard*, No. 11-00449, 2020 WL 4227510, at *4 (E.D. Cal. July 23, 2020) ("[T]he court views with skepticism the suggestion that more than 900 active infections were

---

[3] The court takes judicial notice that the Bureau of Prisons has reported these figures. The fact of those reports is publicly available and is subject to no reasonable dispute. *See* Fed. R. Evid. 201(b); *see also, e.g.*, *United States v. Basher*, 629 F.3d 1161, 1165 (9th Cir. 2011) (taking judicial notice of information reported publicly on Bureau's website). To be clear, the court does not take judicial notice that these figures are accurate, but rather only that the Bureau has reported them.

[4] https://www.bop.gov/locations/institutions/ali/

[5] https://www.bop.gov/coronavirus/index.jsp

resolved within two weeks."). Ms. Jackson has not so shown here. She has not carried her burden to demonstrate "extraordinary and compelling reasons" support her request for a reduction in her sentence.[6]

Nor do the applicable sentencing factors support Ms. Jackson's motion at this time. She has served only about half of her sentence, her crimes were serious, she was caught with a fake driver's license and another person's bank card, and her sentence already incorporates a substantial downward variance. *See* Sent. Stmt. Reasons, ECF No. 122; 18 U.S.C. § 3553(a)(1), (2)(A)–(C) (requiring court consider "the nature and circumstances of the offense, . . . the history and characteristics of the defendant, [and] "the need for the sentence imposed . . . to reflect the seriousness of the offense, to promote respect for the law, . . . to provide just punishment for the offense, to afford adequate deterrence to criminal conduct[, and] to protect the public from further crimes of the defendant").

## IV. CONCLUSION

Ms. Jackson's renewed motions for compassionate release are **denied**. Her requests to file copies of her medical records under seal, previously denied as moot, are now **granted**. This order resolves ECF No. 187 in case No. 09-cr-00325 and ECF No. 79 in case No. 14-cr-00268.

IT IS SO ORDERED.

DATED: January 19, 2022.

CHIEF UNITED STATES DISTRICT JUDGE

---

[6] Ms. Jackson has not claimed or proven that FCI Aliceville is experiencing a surge in infections caused by a SARS-CoV-2 variant. For that reason, the court has not considered whether rising infections caused by a variant would support a motion under § 3582(c)(1)(A).